Affirmed.

31 C.C.P.A.(Patents)

## In re RAY.

### Patent Appeal No. 4892.

Court of Customs and Patent Appeals.
June 26, 1944.

John Flam, of Los Angeles, Cal., for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office rejecting claims 11, 12, 21 and 22 of an application for a patent for improvements in a "Thermoelectric Device" as unpatentable over the prior art. Five claims were allowed.

Claims 11 and 21 are illustrative of the involved subject matter and read as follows:

"11. A thermopile comprising a plurality of pairs of thermocouple elements, each pair providing a hot and a cold junction, a compact flexible cable for said thermopile of a length and form suitable for electrically connecting the same to a relatively remote load, and a heat conducting wire secured to each of said cold junctions and extended for a considerable distance within said cable."

"21. In a thermoelectric power generating device adapted for mounting in a furnace chamber and there to be influenced by the flame of a pilot burner for a main burner: a plurality of pairs of thermocouple elements joined at their ends in electrical series to form a group of hot and of cold junctions, means mounting said device upon the pilot burner so that said hot junctions are heated by said flame, the length of said thermocouple elements being such that said cold junctions are in said furnace and subjected to the heat produced by the flame of said main burner, and metallic heat conductors respectively joined to said cold junctions and terminating in a region the temperature of which is substantially lower than that of the region of said cold junctions."

The references cited are:

Gulcher, 472,261, April 5, 1892;
Fisher, 964,961, July 19, 1910;
Zethmayr, 1,612,897, January 4, 1927;
King, 2,139,504, December 6, 1938;
Milnes, 2,232,961, February 25, 1941.

The device of the application is known as a thermopile. The invention has for its general object an increase in the effectiveness of thermoelectric generating devices, particularly with respect to means for conducting heat away from and thus cooling the cold junctions of such a device. It is designed to be used as a pilot to control the burner in structures such as gas stoves.

The involved thermopile comprises a series of wires in pairs, the members of each pair being of dissimilar metals. Near the top of the device where said wires are connected is what is known as the hot junction, and the lower end where they are twisted together is called the cold junction. The hot junction is kept at a higher temperature than the cold junction and thus an electric current is generated.

The Gulcher patent relates to thermoelectric batteries in which electric force is generated by reason of different degrees of heat in the different metal elements.

The Fisher patent relates to a cable construction in the center of which there is a thermal couple made up of two wires of different metals insulated from each other but electrically connected. The difference in temperature at the opposite ends of the thermal couple effects a flow of current. The device of the patent is designed for detecting temperature within the body of an electrical cable.

The Zethmayr patent relates to multiple vacuum thermocouples adapted especially for measuring alternating currents of high frequency. The thermopile is situated within a vacuum bulb and comprises pairs of different metallic elements in wire form connected in series at electrically heated hot junctions where they join at the top and cold junctions at the bottom. The latter junctions are cooled by means of heat conducting wires connected thereto and extending in parallel alinement through the base of the bulb to the outside.

The King patent provides for a thermal responsive control device adapted for use in controlling an oil burner in response to the presence or absence of flame. It includes a thermopile located in the combustion chamber of the oil burner and the thermopile comprises a series of plates connected in series at hot and cold junctions. The cold junctions are connected to the relatively cold water-back surface of the combustion chamber.

The Milnes patent relates to thermo-electric couples and discloses a thermopile including alloys having different thermo-electric properties. A flue transmits heat to the hot junction faces of the device and the other faces of the elements are cooled by means of heat-radiating fins.

The examiner considered claims 11 and 12 to be unpatentable over the Zethmayr reference, particularly in view of the patent to Fisher. He pointed out that the hot junctions in the device of Zethmayr were heated by a wire and the cold junctions cooled by heat-radiating wires passing through insulation to atmosphere, the wires connecting the heating element and the heat-radiating wires being lead wires to a galvanometer. He stated that there could be no new and unobvious results in forming the lead and cooling wires of the device of the patent into a flexible cable, particularly in view of Fisher.

Claims 21 and 22 were rejected by the examiner as unpatentable over the Milnes or Gulcher patents and further unpatentable over the King reference, the thermo-couple unit of which is mounted in a furnace chamber.

The Board of Appeals, affirming the decision of the examiner, held claims 11 and 12 properly rejected on the Zethmayr patent alone stating that there was no patentable novelty in positioning the heat-radiating wires of Zethmayr in a cable. It held that claims 21 and 22 were substantially met by the prior art, stating that, while the King patent is the only reference showing the mounting of a thermo-electric generating device within a furnace chamber, the positioning of such device whether in the chamber or outside thereof cannot lend patentability to those claims.

With respect to claims 11 and 12, appellant in his brief relies upon an alleged patentable novelty in forming a "compact flexible cable," which arrangement of the cold junction heat-conducting wires and the lead wires is not shown in the Zethmayr reference. With respect to claims 21 and 22 appellant relies on the alleged error of the Patent Office tribunals in not finding anything patentable in leading the cold junction heat conductors to a point outside the furnace or to a region the temperature of which is substantially lower than that of the region of the cold junctions.

All of the references show pairs of thermocouple elements joined at their ends to form hot and cold junctions. It is apparent that the device of the Zethmayr patent fully meets the limitations of claims 11 and 12 except the housing within a cable of the lead wires and the wires which conduct heat away from the cold junction. If the lead and heat-conducting wires of the device of the patent were grouped together in a cable those claims would be fully met. It is clear that such modification does not require invention, in view of the structure of the device of the Fisher patent.

We are of opinion that claims 21 and 22 were properly rejected. The hot junctions in the device of the Milnes reference are heated by flame and the cold junctions are cooled by copper conductors and fins. In the device of Gulcher the hot junctions are heated by a burner and the cold junctions are cooled by cool copper bands. We agree with the examiner in not considering the part of the structure in those claims called "main burner" a patentable limitation.

We are further of opinion that claims 21 and 22 were properly rejected as unpatentable over the King reference. The device of the patent shows a thermo-electric device mounted in a furnace, influenced by a burner, the hot junctions heated by flame and the cold junctions also subjected to the heat of the furnace, and the heat conductors joined to the cold junctions, terminating in the water-back wall, a region where the temperature is substantially lower than in the furnace. Appellant alludes in his brief to the King device by stating that at some stages of the operation of the thermopile there the cold junctions reach the same temperature as the hot junctions while a differential is always maintained in the instant device. This difference, however, is not set out in the claims.

We do not consider the limitation in claim 22 that the heat conductors terminate exteriorly of the furnace as rendering that claim patentable over the device of the King patent. While in the patent the heat conductors terminate at the furnace wall, it would be clearly obvious to one skilled in the art, if he so desired, to conduct them through the furnace wall.

The decision of the Board of Appeals is affirmed.

Affirmed.